## State v. Parkinson
*[Cite as 6 AOA 153]*

*Case No. CA-3506; CA-3508*
*Licking County, (5th)*
*Decided August 9, 1990*

*Kenneth W. Oswalt, Assistant Prosecutor, Courthouse, Public Square, Newark, Ohio 43055, for Plaintiff-Appellee.*

*Richard D. Colbe, 50 West Broad Street, Columbus, Ohio 43215, for Defendant-Appellant.*

*Steven T. Greene, John T. Wallace, Morrow, Gordon & Byrd, 33 West Main Street, P.O. Box 4190, Newark, Ohio, 43055, for Defendant-Appellant.*

GWIN, J.

On January 11, 1989, two indictments were filed in the Court of Common Pleas of Licking County charging defendant-appellant Larry McCreary (McCreary) and defendant-appellant Daniel Parkinson (Parkinson) with Receiving Stolen Property, in violation of R.C. 2913.51, to-wit:

that said McCreary and Parkinson "did receive, retain or dispose of certain property, being a John Deere Model 4650 Farm Tractor *** the property of another, one Brown Implements, the said [McCreary and Parkinson] knowing or having reasonable cause to believe it had been obtained through commission of a theft offense, the value of said property being $5,000.00 or more*** ." Trial was set for July 31, 1989, and the trial court ordered that both cases be consolidated for trial Purposes. We likewise have sua sponte consolidated these two

cases herein for the purposes of appeal and for this opinion pursuant to App. R. 3(B).

Following opening arguments in the instant case, the prosecutor indicated to the trial court for the first time that Roger Parkinson would testify for the State that McCreary had been paid for moving the farm tractor which was the subject of the above charges. The trial court thereafter ordered that any evidence regarding whether appellant was paid for moving the tractor be excluded from evidence because the State failed to reveal this to McCreary through requested discovery and therefore McCreary would be unfairly surprised by any such evidence. The trial court also twice admonished the State to inform its witnesses of this ruling.

Nevertheless, while the State was questioning one of its witnesses, Rodney Hoskinson, the following occurred:

"Q: There's been some conversation or some talk about you having a conversation with Vickie apparently in the hall. What occurred then?

"A: I just was talking to her and earlier, and earlier you said something to me about I knew about Larry McCreary, that Roger had gave him $100 to drive it over, and all I knew was hearsay, what Roger told me and so I never said anything." T. 116.

The trial court recessed the jury and subsequently sua sponte declared a mistrial for the following reasons:

"THE COURT: Let the record show that we are in the Common Pleas Court of Licking County, this 2nd day of August, 1989. We are continuing in the *State of Ohio v. Larry J. McCreary and Daniel A. Parkinson* in Case No. 89-L-17181 and 89-L-17184. These cases have been consolidated for the purposes of trial and yesterday afternoon at approximately 4:15 or thereabouts, on redirect examination of Rodney Hoskinson, there was a response to a question by the State's witness that was contrary to a previous order of the court. After opening statements in this case, the prosecuting attorney in this case, Mr. Oswalt, brought to the attention of the court that there was a witness in this case that had been subpoenaed by the State of Ohio and that was Roger Parkinson, who would also be considered a co-defendant in this case and also would testify to the fact that the defendant, Larry J. McCreary was to be paid $100 for having driven the tractor, the subject matter of receiving stolen property, from Columbus, Ohio, to a farm of the defendant, Danny

Parkinson, near Granville, Ohio, in Licking County. Now, in this case, McCreary had demanded discovery from the prosecutor, which the prosecutor has complied with without a doubt and the court has no reason to anyway think that Mr. Oswalt was trying to sandbag or deprive defense counsel, Mr. McCreary, from having that information. The court being apprised of that information at that point in time and we had passed the opening statement of counsel to the jury and obviously, Mr. Green was taken by surprise, because the whole thrust of his opening statement to the jury was that Mr. McCreary, if he in fact did do that, and it was a stolen tractor, he was merely being a helpful friend without any interest or without knowledge that the tractor was stolen and certainly he was not an active party that participated in the proceedings, and Mr. Greene went on to relate the fact that Mr. McCreary was known throughout the community as a helpful person, well versed in farm equipment and often times did favors for friends, and that being true, the court at this point in time offered to Mr. Greene on behalf of Mr. McCreary, a continuance, because obviously he was unprepared and in order to re-establish his rapore [sic] with the jury would be a difficult thing and if not almost impossible at that stage. The court then made an order that because discovery had been demanded of the prosecutor in this case and the prosecutor having believed that he had fully complied and had no prior warning or knowledge of this information, and that this information would not be divulged and would not be the subject matter of any testimony by either Rodney Hoskinson, in which case would have been hearsay, or Roger Parkinson, also a codefendant. Testimony began for the State and we were proceeding along those particular lines when Mr. Hoskinson on redirect blurted out that Mr. McCreary was to be paid $100 for having transported or driven the tractor. At that point, the court recessed the jury and the court advised Mr. Greene at that point in time that that had now been brought to the attention of the jury and although it was hearsay and the court would have sustained the objection, but Roger Parkinson had testified to that and so the court has given the defendant, Mr. McCreary, in this case, the choice of proceeding in the trial, knowing that the testimony will be available from Mr. Roger Parkinson, if it is true, or the court would grant him a motion for a mistrial. I also want to put on the record that during cross examination of Mr. Hoskinson, Mr. Greene also was continu-

ing with the line of questioning of Mr. Hoskinson about statements he made to one, Vickie Parkinson, the wife of Daniel Parkinson, and that allegedly took place during a recess, and the thrust of that questioning was that Mr. Hoskinson had made an inconsistent statement or a series of statements to Vickie Parkinson contrary to direct examination conducted by the State. The court at that point in time recessed and reviewed in limine what Vickie Parkinson was going to say had occurred outside of the courtroom between her and the witness, and I listened to what she had to say, and the court noted for the record that she was not listed as a witness in this case at all, but for the fact that the statements were allegedly made to her, the prosecuting attorney was taken also by surprise and somewhat also Mr. Greene, because that was not in relationship to the actual trial and no discovery would have covered that aspect of what transpired. The court also notes for the record that Daniel A. Parkinson did not request discovery and did not give discovery, contrary to the course of conduct of Mr. McCreary who did respond and turn to discovery to the prosecutor. However, in light of what has transpired during this trial and the state of mind that the jury must now have, this court feels that in the interest of justice, that the court has no other alternative than but to declare this a mistrial, which the court now does." T. 117-121.

Counsel for McCreary had declined the trial court's offer to move for a mistrial and instead, moved the court to allow the trial to proceed or grant a motion for acquittal. The trial court overruled both motions and instead granted the mistrial. It is from this order that McCreary and Parkinson seek our review and assign the following errors:

"MCCREARY'S ASSIGNMENT OF ERROR: THE COURT BELOW ERRED BY FAILING TO GRANT DEFENDANT-APPELLANT'S MOTION BECAUSE THE MISTRIAL WAS INSTIGATED BY PROSECUTORIAL MISCONDUCT DESIGNED TO PROVOKE A MISTRIAL AND/OR THE GRANTING OF THE MISTRIAL CONSTITUTED AN ABUSE OF DISCRETION.

"PARKINSON'S ASSIGNMENT OF ERROR: THE COURT ERRED BY FAILING TO GRANT DEFENDANT-APPELLANT'S MOTION TO DISMISS BECAUSE THE MISTRI-

AL WAS INSTIGATED BY PROSECUTORIAL MISCONDUCT DESIGNED TO PROVOKE A MISTRIAL."

We shall address both assignments together. It is well-settled that a State may not twice put a defendant in jeopardy for the same offense. *Benton v. Maryland* (1969), 395 U.S. 784, 23 L. Ed. 2d 707. Also, where a trial court *"sua sponte* declares a mistrial, double jeopardy does not bar retrial unless the judge's action was instigated by prosecutorial misconduct designed to provoke a mistrial, or the declaration of a mistrial constituted an abuse of discretion." *State v. Glover* (1988), 35 Ohio St. 3d 18, syllabus. However, double jeopardy may be avoided if the State can "demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant." *Arizona v. Washington* (1978), 434 U.S. 497, 505, 54 L. Ed. 2d 717, 728. In *Washington, supra,* the trial court, over objection, granted the State's motion for a mistrial because the defendant's counsel made improper and prejudicial comments during his opening statement to the jury.

Unlike *Washington, supra,* the instant case involves a prosecutor's delving into impermissible testimony with a State's witness and the trial court *sua sponte* ordering a mistrial over defendant's affirmative request that no mistrial be declared. The record before us tends to indicate that the prosecutor through his final question to Hoskinson was flirting with the specific evidence which the trial court had ordered be excluded. Therefore, we are of the opinion that the prosecutor circumstantially and perhaps unintentionally was guilty of inviting the error which led to the mistrial.

We further find that unlike *Washington, supra,* the trial court effectively usurped the defendants' tactical decision to proceed with the trial by its *sua sponte* ordering a mistrial over defendants' affirmative request that no such mistrial be declared even though it appeared that the prosecutor invited the error upon which the mistrial was granted. As stated in *Washington, supra,* at U.S. 503, 504:

"*** The constitutional protection (double jeopardy] also embraces the defendant's valued right to have his trial completed by a particular tribunal. The reasons why the 'valued right' merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is

stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed."

Succinctly, we find that the prosecutor in the instant case invited the error upon which the trial court ordered a *sua sponte* mistrial, and that the trial court by its order effectively usurped the tactical decision making of the defendants in requesting that no such mistrial be granted and that the trial proceed. It is from this that we believe that McCreary was severely prejudiced by the trial court's order.

In this holding, we are mindful that a trial court's decision to declare a mistrial must be given "great deference" because of the trial court's peculiar place in the trial. *Id.* at 514. However, we find that the trial court abused its discretion here.

As a matter of constitutional right, an accused person in this country who perceives himself mid-trial to have a "winner" is entitled to his "shot at the jury" and it would be tyranny to permit the State through its judges to take that right from him over his expressed objection where, as here, he is without fault. There is just too much "big brother" in this record to pass constitutional muster.

Because both McCreary's and Parkinson's cases were consolidated for trial, we believe it necessary that both defendants be treated alike with regards to the above errors.

Accordingly, we sustain the assignments of error, and pursuant to App. R. 12(C) final judgment of acquittal is hereby entered in favor of defendants McCreary and Parkinson.

PUTMAN, P.J., concurs, and MILLIGAN, J., dissents.

MILLIGAN, J. dissenting.

The unusual situation in which the trial court found the state of the trial at the time of revelation of the payment to McCreary placed the judge and parties in a classic "catch-22" situation.

Clearly, the court acted within its discretion in consolidating the trials of these two defendants in the first instance.

Equally clear is the conclusion that the evidence of payment to McCreary (tardily discov-

ered) would have required separate trials if timely discovered.

Counsel for McCreary obviously knew the court was in this bind and refused to request a mistrial.

It is reasonable speculation that if the court had not declared a mistrial and the defendant were found guilty, he would be here ultimately claiming the trial court erred in not, *sua sponte,* granting a mistrial.

Adding to the dilemma is the passive activity of defendant Parkinson. He, unlike McCreary, neither requested an acquittal, mistrial, nor continuance.

I would conclude that the *sua sponte* declaration of mistrial (1) was not instigated by prosecutorial misconduct "designed to provoke a mistrial," and (2) upon the peculiar facts and circumstances of this case was not an abuse of discretion. *State v. Glover* (1988), 35 Ohio St.3d 18, ___ N.E.2d ___

A trial judge is impelled by the decisions of the Supreme Court to protect defendants from process, procedure, practice to his prejudice by the prosecutor, the court, and his own attorney. Here, the trial judge must be given enlarged discretion to grant a mistrial where there is a joint trial and the evidence has different impact upon different defendants. In order to prevent the prejudice McCreary and Parkinson anticipate by the admission of the evidence of payment, I would specifically order as a condition of affirmance of the trial court's mistrial judgment, that any and all reference to that evidence be excluded upon the retrial of both and either of the defendants. Under those circumstances, I would leave to the trial judge the discretion as to whether to try McCreary and Parkinson in a joint jury trial.