OPINION
Kyle Mobley is appealing the judgment of the Montgomery County Common Pleas Court, finding him guilty of robbery.
On February 16, 2000, Elijah Horn was working after midnight as a clerk at Dairy Mart when a man came in and demanded the money in the cash register. The man stated, "I want you to open up the register, give me your money." Mr. Horn responded, "I can't open the register." The man insisted that he had a gun and continued to demand the money, but Mr. Horn refused. The man then threatened Mr. Horn, stating, "Don't make me shoot ya'." Mr. Horn immediately backed away and told the man to just take the register. In response, the man jerked the register out of the wall and left the store. Mr. Horn immediately called 911. In the approximately twenty-three seconds that the incident occurred, Mr. Horn and the man were face to face and the man wore no hood, mask, or jacket. Additionally, the store had videotaped surveillance of the incident.
The videotape of the incident was aired on Miami Valley Crime Stoppers on Channel 2 News. As a result of the televising of the videotape, in June of 2000, the police received an anonymous tip that the man in the videotape robbing the store was Kyle Mobley. A photo spread was then created with a photograph of Mr. Mobley and presented to Mr. Horn for identification. Mr. Horn immediately chose Mr. Mobley's photo, exclaiming that he would "never forget those eyes." In July of 2000, Mr. Mobley was arrested and interviewed for the February 16, 2000 robbery.
On August 8, 2000, Mr. Mobley was indicted on one count of robbery in violation of R.C. 2911.02(3). On January 5, 2001, Mr. Mobley filed a motion to suppress the identification, which was later overruled. On April 10 and 12, 2001, a jury trial was held. On April 13, 2001, the jury found Mr. Mobley guilty of the charged offense of robbery. On May 10, 2001, the trial court sentenced Mr. Mobley to a five year term of incarceration. Mr. Mobley has filed this appeal.
Mr. Mobley raises the following two assignments of error:
 1. WHEN AN OFFICER WITH EIGHTEEN YEARS OF EXPERIENCE TELLS A JURY THAT HE HAD ". . . A MUG SHOT PHOTOGRAPH OF MR. MOBLEY. HE WAS ALREADY IN OUR SYSTEM. ANYBODY THAT'S ARRESTED AT — AT THE MONTGOMERY COUNTY JAIL . . ." IT IS ERROR NOT TO GRANT DEFENDANT'S MOTION FOR A MISTRIAL BASED ON THE SEVERELY PREJUDICIAL NATURE OF THIS TESTIMONY GRATUITOUSLY INTRODUCED BY THE OFFICER.
 2. WHEN A PROSECUTOR EVOKES AN ANSWER FROM AN OFFICER WITNESS THAT HE HAD ". . . A MUG SHOT PHOTOGRAPH OF MR. MOBLEY. HE WAS ALREADY IN OUR SYSTEM. ANYBODY THAT'S ARRESTED AT — AT THE MONTGOMERY COUNTY JAIL . . ." AND THE PROSECUTOR LETS THE WITNESS CONTINUE THROUGH ALL THIS WITHOUT INTERRUPTING THE WITNESS FULLY RECOGNIZING WHAT PREJUDICE THE OFFICER IS CREATING, IT IS ERROR NOT TO GRANT DEFENDANT'S MOTION FOR A MISTRIAL.
 Standard of Review:
The Ohio Supreme Court has stated the following:
 In evaluating whether the declaration of a mistrial was proper in a particular case, this court has declined to apply inflexible standards, due to the infinite variety of circumstances in which a mistrial may arise. * * * This court has instead adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial.
 State v. Glover (1988), 35 Ohio St.3d 18, 19; (Citations omitted). Thus, the decision whether or not to grant a mistrial rests in the sound discretion of the trial court. Glover, supra. An appellate court may only reverse a trial court if it abused its discretion to the extent that the defendant was materially prejudiced. State v. Stanley (1997), 121 Ohio App.3d 673, 699. An abuse of discretion is more than a mere error of law or judgment but amounts to an attitude that is unreasonable, unconscionable, or arbitrary. State v. Adams (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169.
Appellant's first assignment of error:
Mr. Mobley argues that the detective's statement to the jury that he had obtained a mug shot of Mr. Mobley from a prior arrest was so prejudicial that the trial court erred in denying Mr. Mobley's motion for a mistrial. We disagree.
Evidence of a defendant's prior bad act is not admissible to show that the defendant has a disposition or propensity toward the commission of a crime. State v. Hector (1969), 19 Ohio St.2d 167, 174, 48 O.O.2d 199; see also Evid. R. 404(B). A trial court may not admit evidence that tends to show that the defendant committed a crime entirely independent of the offense for which he is on trial. State v. Breedlove (1971),26 Ohio St.2d 178, 183, citing Hector, supra. However, a curative instruction is an appropriate remedy, rather than a mistrial, for inadvertent answers given by a witness to an otherwise innocent question. State v. Maddox (June 29, 2001), Montgomery App. No. 18389, unreported. Further, a jury is presumed to follow curative instructions given by the trial court and therefore a trial court sustaining an objection and giving a curative instruction has been held to be enough to cure the taint from an improper statement. State v. Garner (1995),74 Ohio St.3d 49, 59; State v. Loza (1994), 71 Ohio St.3d 61 certiorari denied (1995), 514 U.S. 1120.
Mr. Mobley argues that his motion for a mistrial should have been granted based on the following exchange which occurred during direct examination of a police detective with eighteen years experience:
Q: And how did you get that [Mobley's] name?
A: It was obtained as a Crime Stoppers tip.
Q: As a tip? Was it anon — an anonymous tip?
A: Yes. It was, and it was received in June of 2000.
 Q: Okay. And then at that point, did you have a name to work with?
A: Yes.
Q. As a result of two?
A: Yes.
Q: Okay. What did you do with that information?
 A: With that information, I was able to obtain a photograph which we, uh . . . Of a mug shot photography of Mr. Mobley. He was already in our system. Anybody that's arrested at — at the Montgomery County Jail.
 At this point, Mr. Mobley's counsel objected and requested a mistrial. Mr. Mobley objected to the answer of the detective and argued that this information denied him a fair trial. The trial court denied Mr. Mobley's motion, sustained the objection and gave the jury a curative instruction. In his curative instruction, the trial court explained to the jury that they could not use the detective's comments in their deliberation and ordered them to disregard his comments completely. Additionally, Mr. Mobley's counsel moved for a mistrial at the close of the prosecution's case in chief and again prior to the jury's deliberations, but the trial court denied both motions, holding instead that the curative instruction was sufficient.
The State concedes in their brief that the detective's answer could have raised jurors' suspicion that the defendant had some prior criminal involvement, and was not proper for the jury to hear. We agree with the State that the detective's answer was in error and should not have been given. However, in the instant case, the trial court sustained the defense's objection and gave a curative instruction. (Tr. 101). Specifically, the trial court told the jury "to disregard completely the comments last made by [the detective]. Those comments cannot in any way be used by this Jury when it comes time to deliberate. So, please disregard those comments." (Id.) Moreover, the trial court in the instructions to the jury reiterated that the jury should disregard answers which were stricken by the trial court. (Tr. 312). We find this case similar to Garner and Loza and find that although the detective's statement was error, it was cured by the trial court's instructions to the jury.
Moreover, even if the trial court's instruction had not cured the error, the detective's improper statement was harmless error. Constitutional errors are "harmless beyond a reasonable doubt and [do] not provide grounds for reversal of the conviction where the pertinent testimony of witnesses at the trial is not the product of [the error] and is overwhelmingly sufficient to independently establish the elements of the offense beyond a reasonable doubt." State v. Brown (1992),65 Ohio St.3d 483, 485, quoting State v. Tabasko (1970), 22 Ohio St.2d 36. Additionally, a defendant is guaranteed only a fair trial, not a perfect one. State v. Lott (1990), 51 Ohio St.3d 160, 166. At trial, Mr. Horn positively identified Mr. Mobley as the man who demanded money from him and took the cash register the night of the robbery at the Dairy Mart. Mr. Horn testified that for approximately twenty-three seconds he looked straight into the eyes of the man robbing the store, who was not wearing a disguise or anything to cover his face. Additionally, the State presented a videotape from the incident at the Dairy Mart which corroborated Mr. Horn regarding the length of time of the exchange and his proximity to the perpetrator. Also, Mr. Horn was able to pick Mr. Mobley out of a photo spread and stated that he was one hundred percent confident choosing him. Moreover, Joanne Moses, the manager of the Dairy Mart, identified Mr. Mobley as the perpetrator. Ms. Moses recognized Mr. Mobley from the videotape and as a frequent customer of the Dairy Mart. Finally, the detective testified that he received Mr. Mobley's full name and alias from an anonymous tip after Crime Stoppers aired the videotape. Based on this evidence, the State proved Mr. Mobley committed the robbery beyond a reasonable doubt.
Additionally, Mr. Mobley attempted to establish an alibi but failed. Also, Mr. Mobley called an expert witness on eyewitness identification. However, the expert witness's factors that are used to determine the accuracy of the identification actually favored an accurate identification in this case. During the crime, no weapon was displayed to draw Mr. Horn's attention, but rather Mr. Horn and Mr. Mobley engaged in face to face dialogue, which according to the expert was more likely to draw attention to Mr. Mobley's face. The expert went on to say that what's important in evaluating an eyewitness identification is not the length of time of the incident but the amount of time that was face to face. Here, in the instant case, almost the entire exchange was face time and lasted approximately twenty three seconds. Therefore, the evidence presented at trial aside from the reference to the "mug shot" was sufficient to prove Mr. Mobley's guilt beyond a reasonable doubt. Therefore, any error by the trial court in failing to grant Mr. Mobley's motion for a mistrial based on the detective's improper statement was harmless error. Mr. Mobley's first assignment of error is without merit and is overruled.
Appellant's second assignment of error:
Mr. Mobley argues that the prosecutor in his questioning sought to evoke a response from the detective referencing the mug shot and Mr. Mobley's prior incarceration and therefore, Mr. Mobley's motion for a mistrial should have been granted. We disagree.
It is improper for an attorney in a criminal case before a jury to make testimonial assertions under the pretext of examining a witness. Statev. Daugherty (1987), 41 Ohio App.3d 91. Moreover, an attorney behaves unprofessionally by placing information before a jury that is not evidence under the pretext of asking questions. Id. In the instant case, the prosecutor's question was the following, "What did you do with that information?," referring to the Crime Stoppers anonymous tip which gave the police Mr. Mobley's name. In this question, the prosecutor did not present damaging facts to the jury under the guise of asking a question. Mr. Mobley simply assumes that the prosecutor intended to elicit damaging information. Moreover, there is no evidence in the record that supports Mr. Mobley's allegation that the prosecutor was attempting to elicit the improper response from the detective. Rather, the prosecutor could have simply expected the detective to state that he obtained a photo of Mr. Mobley or to state that he constructed a photo spread which contained Mr. Mobley's photo. Therefore, the prosecutor did not place information not in evidence before the jury or damaging information under the guise of examining a witness and therefore, the prosecutor's question was not prejudicial to Mr. Mobley's right to receive a fair trial. We find that the trial court properly overruled Mr. Mobley's motion for a mistrial based on the prosecutor's question. Mr. Mobley's second assignment of error is without merit and is overruled.
The judgment of the trial court is affirmed.
WOLFF, P.J. and GRADY, J., concur.